IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HYFIN LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| FIDELITY INFORMATION SERVICES, LLC, | ) |
| | ) Case No. 2:23-cv-02389 |
| and | ) |
| | ) |
| WORLDPAY, LLC, | ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT

Plaintiff Hyfin LLC, for its Complaint against defendants Fidelity Information Services, LLC and WorldPay, LLC, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Hyfin LLC ("Hyfin") is a Kansas limited liability company with its principal place of business located at 8711 Penrose Lane, Suite 200, Lenexa, KS 66219. Plaintiff HYFIN has six (6) members: JSL Enterprises, Inc., Scavuzzos Holdings, LLC, Dash One, LLC, Timothy Walla, Guillermo Haro, and Angelica Haro all of which are citizens of Kansas, Missouri, Illinois, or California.

2. JSL Enterprises, Inc. is a Kansas corporation with its principal place of business in Kansas.

3. Scavuzzos Holdings, LLC, is a Kansas limited liability company with its principal place of business in Kansas. Scavuzzos Holdings, LLC has one (1) member: Richard Scavuzzo who is a citizen of Kansas.

1

4. Dash One, LLC is a Kansas limited liability company. Dash One, LLC has seven (7) members, all of which are citizens of either Kansas, Missouri, or Illinois: Pima LLC, a Kansas LLC; Ben Kalny, a resident of Kansas; John Kieffer, a resident of Kansas; Daniel Parker, a resident of Kansas; Nobe Financial LLC, a Missouri LLC; David Hood, a resident of Missouri; and Craig Easley, a resident of Illinois. The members of Pima LLC are John Christy and Andrew Christy, both residents of Kansas. The sole member of Nobe Financial LLC is Brent Hankins, a resident of Missouri.

5. Defendant Fidelity Information Services, LLC ("FIS") is an Arkansas limited liability company with its principal place of business located at 601 Riverside Ave., Tower- 12th Floor, Jacksonville, FL 32204. Upon information and belief, Defendant FIS has one (1) member: Fidelity National Information Services, Inc., which is a corporation incorporated in the state of Georgia with a principal place of business in Florida.

6. Defendant WorldPay, LLC ("WorldPay") is a Delaware LLC whose sole member, on information and belief, is Fidelity National Information Services, Inc.

7. FIS and Worldpay may each be served with process by serving their registered agent as follows: C T Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

8. For purposes of diversity of citizenship, Hyfin is deemed to be a citizen of Kansas, Missouri, Illinois, and California.

9. For purposes of diversity of citizenship, the citizenship of Defendants FIS and WorldPay are determined by the citizenship of their members—here, Georgia and Florida.

10. Jurisdiction in this action is proper pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, and because complete diversity of citizenship exists among the parties.

11. Venue in this action is Proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth occurred in this District, or, in the alternative, pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2).

## FACTS COMMON TO ALL COUNTS

12. Hyfin, previously known as Dash Now LLC, is a software developer that designs and creates systems that help businesses get paid faster.[1]

### A. The System

13. In 2018, Hyfin developed a proprietary contactless payment system with significant third-party integrations that facilitates the delivery of small business orders and invoices, and the payment thereof, all by SMS text messaging, among other things (the "System").

14. The System offers merchants text-to-pay and email-to-pay solutions to facilitate requesting and receiving customer payments.

15. The System provides merchants with an easy and convenient way to create and share links with customers via text or email that the customers are then able to use to access and pay invoices for the merchants' products or services.

### B. Hyfin Contracts with WorldPay, LLC

16. On July 19, 2021, Hyfin and WorldPay entered into a TextPay White Label Software as a Service License Agreement (the "Agreement") wherein Hyfin agreed to provide WorldPay with access to and the right to use the System in exchange for certain payments.

17. Because it was contemplated that Hyfin's System would integrate with Worldpay's gateway, Hyfin underwent a formal vendor review process prior to entering into the Agreement to

---

[1] On or about August 16, 2022, Dash Now LLC filed its Name Change Amendment with the Office of the Kansas Secretary of State amending its name to Hyfin LLC.

ensure the System complied with WorldPay's policies and security requirements, including cardholder data security requirements, if applicable.

18. WorldPay's vendor review confirmed Hyfin and its System did not handle or store credit card data and otherwise met WorldPay's policies and security requirements.

19. Accordingly, WorldPay approved the System, entered into the Agreement and began offering the System to merchants.

20. The Agreement obligated WorldPay to make an initial payment to Hyfin in addition to ongoing fee payments including a per-account onboarding Set-Up Fee, Monthly Account Fees per enrolled merchant account (subject to a minimum monthly amount), and per-text message and per-email message fees as set forth in Section 9, and its subparts, of the Agreement.

21. The initial term of the Agreement was for a period of five (5) years. The Agreement provided that, after the first two (2) years of the Agreement, either party could terminate the Agreement without cause by providing 12 months' written notice of its intent to do so. Agreement at p. 9 Section 15.1.

22. Thus, the effective minimum term of the Agreement was for a period of three years beginning on July 19, 2021.

23. The Agreement authorized WorldPay to offer the System to its customers under WorldPay's own label and brand. Agreement at p.1, Section 2.

24. WorldPay agreed to exclusively offer the System to its customers, with the exception that it was permitted to offer new customers any internally, independently developed text-to-pay and email-to-pay system:

> 4.1 Exclusive use of System. During the Term of the Agreement, Licensee agrees to exclusively use the System for any text-to-pay or email-to-pay features or functions offered to its customers, prospects or any third parties with the exception of such a system

4

    developed internally by Licensee. For clarity, Licensee specifically agrees that it will not through third party provide text-to-pay or email-to-pay services during the Term of this Agreement. Notwithstanding the foregoing, nothing herein shall limit or prevent Licensee from developing internally, with its own employees, a system that provides text-to-pay or email-to-pay features, and offering that system to its customers, provided that (a) such employees have not used or directly or indirectly had access to the System or any Provider Material, (b) any such development is conducted in all respects with the use of or reference to the Provider's Confidential Information, and (c) Licensee will not provide such services to any Enrolled Customers during the Term. For clarity, Licensee agrees that once a customer is enrolled in the System, if Licensee subsequently begins providing similar services directly, it will not move those Enrolled Customers off of the System to Licensee's proprietary system for the duration of the Term. In the event that Licensee violates this provision of the Agreement, it shall pay to Provider, as liquidated damages, an amount equal to ten (10) times the annual fees previously paid to Provider with respect to such Enrolled Customers.

Agreement at p. 3, Section 4.1.

  25. Among other things, the Agreement provides that if and to the extent that the System were or became subject to the Payment Card Industry Data Security Standards ("PCI DSS"), Hyfin would be obligated to comply with those requirements and provide certain compliance reporting to WorldPay. Agreement at p. 7, Section 12.2.

**C. Inapplicability of PCI DSS Requirements**

  26. PCI DSS compliance is designed to protect the privacy and security of sensitive cardholder data by ensuring that merchants and service providers meet minimum levels of security when they store, process and transmit that data.[2]

  27. PCI DSS requirements apply in three situations, none of which apply to Hyfin or the System:

---

[2] The PCI Security Standards Council promulgates PCI DSS requirements. At all times relevant to this suit, the PCI DSS provisions in effect were version 3.2.1, available at: PCI DSS v3.2.1 (pcisecuritystandards.org/document-library/).

5

1. If the entity stores, processes or transmits cardholder data and/or sensitive authentication data.
2. If the entity engages third party service providers for (i.e., outsources) their payment operations or management of their cardholder data environment ("CDE").
3. If 1 and 2 do not apply, some PCI DSS requirements may still apply to an entity third party service provider if the entity can impact the security of, in turn, a service provider or merchant's CDE.

PCI-DSS-v3.2.1 at 7-12.

28. Hyfin's System does not come within the scope of PCI DSS requirements because: (1) Hyfin has never stored, processed, or transmitted cardholder data (as WorldPay's vendor review process confirmed); (2) Defendants, not Hyfin, engage third party service providers; and (3) the System cannot impact the security of Defendants' cardholder data environment because Hyfin intentionally designed the System to avoid such a possibility.

29. Because the System does not fall within any of the above three situations, PCI DSS requirements do not apply to it and therefore the obligations as set forth in Section 12.2, and its subparts, of the Agreement do not apply and have never applied to Hyfin.

30. During the term of the Agreement, Defendants performed an annual risk assessment review of Hyfin, similar to their initial vendor review, and at no point during those reviews did Defendants inform Hyfin that its System was not in compliance with PCI DSS requirements.

31. The System has not undergone material changes in functionality since the Agreement was executed such that it would become subject to the PCI DSS Requirements.

**D. FIS and Hyfin Amend the Agreement**

32. On or about July 31, 2019, Defendant FIS finalized its acquisition of WorldPay. The nature of the acquisition was a merger of WorldPay with and into a wholly-owned subsidiary of FIS, with WorldPay as the surviving entity and continuing as a wholly-owned subsidiary of FIS.

33. Upon information and belief, following the merger, between July 31, 2021 and October 1, 2021, the operations formerly undertaken by WorldPay became a business unit of FIS known as Merchant Solutions. The FIS North American Integrated Payments division was a division of Merchant Solutions. On information and belief, in 2022, the functions of the North American Integrated Payments division were reorganized into divisions of FIS known as "Small and Medium Business" or "SMB," and "Enterprise."

34. Effective October 1, 2021, FIS and Hyfin amended the Agreement in the First Amendment to TextPay White Label Software as a Service License Agreement (the "First Amendment").

35. The First Amendment arose out of a breach of the original worldwide exclusivity provision of the Agreement by WorldPay/FIS.

36. WorldPay/FIS represented and explained to Hyfin that as a result of the WorldPay/FIS merger, all of the existing WorldPay agreements were "rolling up into," and "inherited" by FIS.

37. In the course of negotiating the Amendment, FIS told Hyfin that during FIS's review of Worldpay agreements for purposes of rolling them up into FIS, FIS had become aware of the worldwide exclusivity provision in the Agreement and the fact that, as a result of the merger, Defendants were in violation of that provision.

38. FIS explained that it needed to limit the scope of the exclusivity provision to North America so that its current operations could be in compliance with that provision.

39. To remedy the breach, the parties agreed to narrow the scope of the exclusivity provision to North America in exchange for certain increased pricing, elimination of FIS's ability to utilize internally-developed systems, and an extension of the minimum term of the Agreement.

7

40. Specifically, Section 4.1 of the First Amendment replaced the prior exclusivity language with the following:

> 4.1 <u>Exclusive Use of System.</u>  During the Term of this agreement, Licensee agrees:
>
> a. the FIS North American Integrated Payments division and its successors will **exclusively use and promote the System for any text-to-pay or email-to-pay features or functions** using the System integrated into the GoCart Product.
>
> b. the FIS North American Integrated Payments division and its successors will **exclusively use and promote the System for any text-to-pay or email-to-pay features or functions** offered to its customers, prospects or any third parties.
>
> c. not to develop internally a competing system that provides text-to-pay or email-to-pay features.
>
> d. will use reasonable endeavors to engage Provider in any future text-to-pay or email-to-pay opportunities and include Senior Executive Support.

First Amendment at p. 1, § 4.1 (emphasis added).

41. The First Amendment also increased the monthly minimum fee and increased certain other pricing. First Amendment at p. 1, § 4.2 and p. 3.

42. The term of the Agreement was modified such that the stated term of five (5) years from October 1, 2021 could only be terminated without cause after the first three (3) years by providing 12 months' written notice. First Amendment at p. 1, § 4.3. The First Amendment therefore effectively lengthened the minimum term of the Agreement from three years to four years.

43. The Agreement and First Amendment are collectively referred to herein as the "Amended Agreement."

E. **FIS Feigns Breach by Hyfin**

44. Following the execution of the Amended Agreement, the System has not been exclusively used and promoted for any text-to-pay or email-to-pay features or functions by the North American Integrated Payments Division or its successors.

45. According to press reports, after Defendant FIS acquired WorldPay it faced significant difficulty integrating the business. Earlier this year, FIS wrote-off a large portion of the value of the acquisition, made sizeable cuts to its workforce, and announced plans to spin off the WorldPay business.

46. On December 14, 2022, Defendants sent Hyfin a Notice of Breach claiming for the first time that the PCI DSS requirements applied to the System and that Hyfin was in violation of those requirements and the related contingent reporting obligations set forth in the Amended Agreement. A true and correct copy of Defendants' December 14, 2022 letter is attached hereto as **Exhibit 1**.

47. Defendants' December 14th Notice of Breach demanded Hyfin cure the alleged breach and refund all fees paid to date totaling $1,511,160.34. *See* **Exhibit 1**.

48. On December 16, 2022, Hyfin responded to Defendants' notice and reassured Defendant that the reporting requirements under Section 12.2 and its subparts were inapplicable to Hyfin because those requirements, as explained *supra*, do not apply to Hyfin or the System. A true and correct copy of Hyfin's December 16, 2022 letter is attached hereto as **Exhibit 2**.

49. In early 2023, both (1) a former employee of FIS who is familiar with the System and the parties' relationship, and (2) Hyfin's main point of contact at FIS, acknowledged in writing that the PCI DSS requirements do not apply to the System. Nonetheless, Defendants' senior management and general counsel's office have continued to take the contrary position.

50. In light of Defendants' senior management's continuing unjustified position on the PCI DSS issue, Hyfin contracted with Lazarus Alliance, Inc. ("Lazarus") in or about January 2023 to conduct an audit and assessment of the System (1) to confirm the applicability, or lack thereof, of PCI DSS requirements to the System, and (2) to confirm in the event the System did fall within the scope of PCI DSS whether Hyfin was in compliance with such requirements.

51. Lazarus is a PCI DSS Qualified Security Assessor that has been approved by the PCI Security Standards Council, the same organization that promulgates the PCI DSS requirements, to test and assess an organization's compliance with the PCI DSS standards.

52. On February 21, 2023, upon completion of the intensive audit process, Lazarus verified that the System does not store, process, and/or transmit cardholder data, and Hyfin does not have access to a cardholder data environment (CDE). Therefore, Lazarus certified that none of the PCI DSS v.3.2.1 requirements apply to the System. A true and accurate copy of Lazarus' PCI DSS Attestation of Compliance and Letter Affidavit are attached hereto as **Exhibit 3**.

53. On March 3, 2023, Hyfin provided Defendants with Lazarus' PCI DSS Report on Compliance and Supporting Affidavit as further proof that the System was not subject to PCI DSS requirements and therefore Hyfin was compliant with the Amended Agreement. At that same time, Hyfin notified Defendants that they were in breach of the payment obligations under the Amended Agreement and requested that Defendants discuss resolution of the matter if they now wished to exit the Amended Agreement. A true and correct copy of Plaintiff's March 3, 2023 correspondence (without attachments) is attached hereto as **Exhibit 4.**

54. Hyfin's attempts to engage with Defendants and resolve the parties' differences have been met with dismissive responses from Defendants that fail to articulate any factual basis to support their contention that the System is within the scope of PCI DSS requirements.

55. On March 24, 2023, Defendants rejected Hyfin's position without further explanation or offer to discuss resolution, and purported to terminate the Amended Agreement. A true and correct copy of Defendant's March 24, 2023 correspondence is attached hereto as **Exhibit 5**.

56. In direct contradiction to Defendants' purported concerns for data security, Defendants have continued to use the System even as they allege that the System does not comply with PCI DSS requirements. Moreover, during that same time period, various FIS and/or WorldPay departments continued with plans to implement the System and have since reached out to Hyfin to inquire about using the System in future projects.

57. Upon information and belief, Defendants' unsupported proclamation that Hyfin was in breach of the Amended Agreement was not based on a bona fide concern over compliance with security requirements, but rather was pretext for Defendants' attempt to avoid contractual commitments for reasons not related to Hyfin's performance or any legitimate data security concerns.

58. Since the time Defendants first wrongfully claimed Hyfin was in breach of the Amended Agreement, Defendants have failed to timely pay contractual payments exceeding $750,000.00, all in violation of the terms of the Amended Agreement, and have expressed their unequivocal rejection of any further obligations under the Amended Agreement.

59. As such, Defendants have renounced all remaining minimum monthly payments payable for the remaining minimum term of the Amended Agreement through September 30, 2025. The unpaid minimums payments owed by Defendants to Hyfin through the remaining minimum term (through September 30, 2025) total several million dollars.

### F. Defendants Breach the Exclusivity Provision

60. Upon information and belief, in an attempt to cut costs and in direct violation of the Amended Agreement's exclusivity provisions, Defendants' North American Integrated Payments Division (or its current equivalent division(s)) are using other third party and internally developed systems with text-to-pay or email-to-pay features or functions including but not limited to Payrix, WorldPay OmniFlex, and WorldPay Business Manager (the "Prohibited Systems").

61. For each merchant enrolled in the Prohibited Systems, Hyfin is entitled to a one-time Set-Up fee and a recurring Monthly Account Fee under the terms of the Amended Agreement. Hyfin estimates the number of such merchants to be in excess of 640,000, for a total of tens of millions of dollars in setup fees alone, and several million dollars per month in Monthly Account fees.

62. Upon information and belief, Defendants have breached the exclusivity provisions of the Amended Agreement by failing to exclusively use and promote the System within the North American Integrated Payments Division (or its current equivalent division(s)) as required for any text-to-pay or email-to-pay features or functions offered to Defendants' customers.

63. Defendants' allegations of breach are nothing more than pretext to cut costs in the wake of attempting to unwind the WorldPay merger, which FIS now views as a failed economic venture. *See*, *e.g.*, Fontanella-Kahn, Megaw and Levingston, *WorldPay and FIS: the 'original sin' that tore up a $43bn merger*, FINANCIAL TIMES, March 1, 2023.

64. Defendants' actions in lodging baseless and thoroughly disproven allegations of breach against Hyfin and in purporting to terminate the Amended Agreement breach their duty of good faith and fair dealing and are the legal cause of substantial damage to Hyfin for which Hyfin now seeks recovery in an amount to be determined at the time of trial.

## COUNT I: BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

65. Plaintiff Hyfin incorporates by reference all Paragraphs above as if fully set forth herein.

66. The Amended Agreement is a valid and binding contract between Plaintiff Hyfin and Defendants.

67. In the Amended Agreement, Defendants agreed (1) to pay Plaintiff Hyfin for the use of the System, (2) to exclusively use and promote the System for any text-to-pay or email-to-pay features or functions offered to certain of their customers, prospects, or any third parties, and (3) to forgo the use of any internally-developed competing system that provides text-to-pay or email-to-pay features.

68. Plaintiff Hyfin provided Defendants with access to the System pursuant to the Amended Agreement and has complied with all material obligations under the Amended Agreement but has not been paid since December 12, 2022.

69. Defendants breached the Amended Agreement when they failed to pay required contractual payments and purported to terminate the Amended Agreement, each under the pretext that Plaintiff Hyfin had failed to comply with PCI DSS requirements that are inapplicable to Plaintiff Hyfin or the System.

70. Moreover, Defendants, in breach of the Amended Agreement, have failed to exclusively use and promote the System for any text-to-pay or email-to-pay features or functions offered to certain of Defendants' customers and have developed their own competing system that provides text-to-pay or email-to-pay features.

71. Defendants had and have an implied duty of good faith and fair dealing under the Amended Agreement.

72. In breach of this implied covenant, Defendants have failed to abide by the good faith spirit of the Amended Agreement's terms by acting with a self-serving motive in hopes of avoiding their obligations to Plaintiff Hyfin and thereby depriving Plaintiff Hyfin of the expected benefits of the Amended Agreement.

73. As a direct and proximate result of Defendants' breach of contract and breach of the duty of good faith and fair dealing, Plaintiff Hyfin has suffered, and continues to suffer, damages exceeding $75,000.00, exclusive of interest and costs.

74. The Amended Agreement provides that in the event a suit is instituted arising out of or related to the Agreement, the prevailing party may recover its actual attorneys' fees and costs. Agreement at p. 12, § 17.12. Accordingly, Plaintiff Hyfin is also entitled to recover its fees and costs incurred in bringing and pursuing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hyfin prays for judgment against Defendants jointly and severally as follows:

75. Compensatory damages in excess of $75,000.00, the exact amount of which to be determined at the time of trial;

76. An award of actual and reasonable attorneys' fees and costs for services rendered to Plaintiff Hyfin in this action;

77. An award of pre- and post-judgment interest;

78. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Hyfin demands a trial by jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Local Rule 40.2(a), Plaintiff Hyfin designates Kansas City, Kansas as the place of trial for this matter.

Dated:  September 5, 2023            Respectfully submitted,

/s/ Sean W. Colligan
Sean W. Colligan, Kan. Bar # 25727
Christopher B. Sevedge, Kan. Bar # 27714
STINSON LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106-2150
Tel: (816) 691-3384
Fax: (816) 691-3495
sean.colligan@stinson.com
chris.sevedge@stinson.com
ATTORNEYS FOR PLAINTIFF