## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HYFIN LLC,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| **FIDELITY INFORMATION SERVICES, LLC,** ) | Case No. 2:23-cv-02389 |
| ) | |
| **and** ) | |
| ) | |
| **WORLDPAY, LLC,** ) | |
| ) | |
| *Defendants.* ) | |

### DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendants Fidelity Information Services, LLC and Worldpay, LLC ("Defendants") hereby respond to Plaintiff Hyfin LLC's Complaint against Defendants and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Hyfin LLC ("Hyfin") is a Kansas limited liability company with its principal place of business located at 8711 Penrose Lane, Suite 200, Lenexa, KS 66219. Plaintiff HYFIN has six (6) members: JSL Enterprises, Inc., Scavuzzos Holdings, LLC, Dash One, LLC, Timothy Walla, Guillermo Haro, and Angelica Haro all of which are citizens of Kansas, Missouri, Illinois, or California.

**ANSWER: Defendants Fidelity Information Services, LLC ("FIS") and Worldpay, LLC ("Worldpay") (collectively "Defendants") are without sufficient information to form a belief as to the truth of this allegation, and therefore, Defendants deny the allegations in Paragraph 1.**

2.     JSL Enterprises, Inc. is a Kansas corporation with its principal place of business in Kansas.

**ANSWER: Defendants are without sufficient information to form a belief as to the truth of this allegation, and therefore, Defendants deny the allegations in Paragraph 2.**

3.        Scavuzzos Holdings, LLC, is a Kansas limited liability company with its principal place of business in Kansas. Scavuzzos Holdings, LLC has one (1) member: Richard Scavuzzo who is a citizen of Kansas.

**ANSWER: Defendants are without sufficient information to form a belief as to the truth of this allegation, and therefore, Defendants deny the allegations in Paragraph 3.**

4.        Dash One, LLC is a Kansas limited liability company. Dash One, LLC has seven (7) members, all of which are citizens of either Kansas, Missouri, or Illinois: Pima LLC, a Kansas LLC; Ben Kalny, a resident of Kansas; John Kieffer, a resident of Kansas; Daniel Parker, a resident of Kansas; Nobe Financial LLC, a Missouri LLC; David Hood, a resident of Missouri; and Craig Easley, a resident of Illinois. The members of Pima LLC are John Christy and Andrew Christy, both residents of Kansas. The sole member of Nobe Financial LLC is Brent Hankins, a resident of Missouri.

**ANSWER: Defendants are without sufficient information to form a belief as to the truth of this allegation, and therefore, Defendants deny the allegations in Paragraph 4.**

5.        Defendant Fidelity Information Services, LLC ("FIS") is an Arkansas limited liability company with its principal place of business located at 601 Riverside Ave., Tower- 12th Floor, Jacksonville, FL 32204. Upon information and belief, Defendant FIS has one (1) member: Fidelity National Information Services, Inc., which is a corporation incorporated in the state of Georgia with a principal place of business in Florida.

**ANSWER: Defendants admit to the allegations in Paragraph 5.**

6.        Defendant WorldPay, LLC ("WorldPay") is a Delaware LLC whose sole member, on information and belief, is Fidelity National Information Services, Inc.

**ANSWER: Defendants admit to the allegations in Paragraph 5.**

7.      FIS and Worldpay may each be served with process by serving their registered agent as follows: C T Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

**ANSWER: The allegations in Paragraph 7 state legal conclusions as to which no response is required. To the extent a response is required, Defendants admit the allegations contained in Paragraph 7.**

8.      For purposes of diversity of citizenship, Hyfin is deemed to be a citizen of Kansas, Missouri, Illinois, and California.

**ANSWER: The allegations in Paragraph 8 state legal conclusions as to which no response is required. To the extent a response is required, Defendants are without sufficient information to form a belief as to the truth or falsity of this allegation and as such, Defendants deny the allegations in Paragraph 8.**

9.      For purposes of diversity of citizenship, the citizenship of Defendants FIS and WorldPay are determined by the citizenship of their members—here, Georgia and Florida.

**ANSWER: The allegations in Paragraph 9 state legal conclusions as to which no response is required. To the extent a response is required, Defendants admit the allegations contained in Paragraph 9.**

10.     Jurisdiction in this action is proper pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, and because complete diversity of citizenship exists among the parties.

**ANSWER: The allegations in Paragraph 10 state legal conclusions as to which no response is required. To the extent a response is required, Defendants are without sufficient information to form a belief as to the truth or falsity of this allegation and as such, Defendants deny the allegations in Paragraph 10.**

11.     Venue in this action is Proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth occurred in this District, or, in the alternative, pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2).

**ANSWER: The allegations in Paragraph 10 state legal conclusions as to which no response is required. To the extent a response is required, Defendants are without sufficient information to form a belief as to the truth or falsity of this allegation and as such, Defendants deny the allegations in Paragraph 10.**

## FACTS COMMON TO ALL COUNTS

12.     Hyfin, previously known as Dash Now LLC, is a software developer that designs and creates systems that help businesses get paid faster.[1]

**ANSWER: Defendants are without sufficient information to form a belief as to the truth of this allegation, and therefore, Defendants deny the allegations in Paragraph 12.**

**A.     The System**

13.     In 2018, Hyfin developed a proprietary contactless payment system with significant third-party integrations that facilitates the delivery of small business orders and invoices, and the payment thereof, all by SMS text messaging, among other things (the "System").

**ANSWER: Defendants are without sufficient information to form a belief as to the truth of this allegation, and therefore, Defendants deny the allegations in Paragraph 13.**

14.     The System offers merchants text-to-pay and email-to-pay solutions to facilitate requesting and receiving customer payments.

**ANSWER: Defendants admit the allegations contained in Paragraph 14.**

15.     The System provides merchants with an easy and convenient way to create and share links with customers via text or email that the customers are then able to use to access and pay invoices for the merchants' products or services.

**ANSWER: Defendants are without sufficient information to form a belief as to the truth of this allegation, and therefore, Defendants deny the allegations in Paragraph 15.**

**B.     Hyfin Contracts with WorldPay, LLC**

16.     On July 19, 2021, Hyfin and WorldPay entered into a TextPay White Label Software as a Service License Agreement (the "Agreement") wherein Hyfin agreed to provide WorldPay with access to and the right to use the System in exchange for certain payments.

---

[1]     On or about August 16, 2022, Dash Now LLC filed its Name Change Amendment with the Office of the Kansas Secretary of State amending its name to Hyfin LLC.

4

**ANSWER: Defendants state the document speaks for itself. To the extent a response is required, Defendants admit the allegations contained in Paragraph 16.**

17.     Because it was contemplated that Hyfin's System would integrate with Worldpay's gateway, Hyfin underwent a formal vendor review process prior to entering into the Agreement to ensure the System complied with WorldPay's policies and security requirements, including cardholder data security requirements, if applicable.

**ANSWER: Defendants admit that Hyfin's System underwent a formal vendor review process prior to entering the Agreement. Defendants deny that the System complied with Worldpay's policies and security requirements. Defendants deny any remaining allegations in Paragraph 17.**

18.     WorldPay's vendor review confirmed Hyfin and its System did not handle or store credit card data and otherwise met WorldPay's policies and security requirements.

**ANSWER: Defendants deny the allegations in Paragraph 18.**

19.     Accordingly, WorldPay approved the System, entered into the Agreement and began offering the System to merchants.

**ANSWER: Defendants deny that Worldpay approved the System, and therefore, Defendants deny the allegations in Paragraph 19.**

20.     The Agreement obligated WorldPay to make an initial payment to Hyfin in addition to ongoing fee payments including a per-account onboarding Set-Up Fee, Monthly Account Fees per enrolled merchant account (subject to a minimum monthly amount), and per-text message and per-email message fees as set forth in Section 9, and its subparts, of the Agreement.

**ANSWER: The allegations in Paragraph 20 state legal conclusions as to which no response is required. Defendants also assert that the document speaks for itself. To the extent a response is required, Defendants deny the allegations in Paragraph 20.**

21.     The initial term of the Agreement was for a period of five (5) years. The Agreement provided that, after the first two (2) years of the Agreement, either party could terminate the

Agreement without cause by providing 12 months' written notice of its intent to do so. Agreement

at p. 9 Section 15.1.

**ANSWER: The allegations in Paragraph 21 state legal conclusions as to which no response is required. Defendants also assert that the document speaks for itself. Defendants deny any remaining allegations contained in Paragraph 21.**

22.    Thus, the effective minimum term of the Agreement was for a period of three years

beginning on July 19, 2021.

**ANSWER: The allegations in Paragraph 22 state legal conclusions as to which no response is required. Defendants also assert that the document speaks for itself. Defendants deny any remaining allegations contained in Paragraph 22.**

23.    The Agreement authorized WorldPay to offer the System to its customers under

WorldPay's own label and brand. Agreement at p.1, Section 2.

**ANSWER: The allegations in Paragraph 23 state legal conclusions as to which no response is required. Defendants also assert that the document speaks for itself. Defendants deny any remaining allegations contained in Paragraph 23.**

24.    WorldPay agreed to exclusively offer the System to its customers, with the

exception that it was permitted to offer new customers any internally, independently developed

text-to-pay and email-to-pay system:

> 4.1 Exclusive use of System. During the Term of the Agreement, Licensee agrees to exclusively use the System for any text-to-pay or email-to-pay features or functions offered to its customers, prospects or any third parties with the exception of such a system developed internally by Licensee. For clarity, Licensee specifically agrees that it will not through third party provide text-to-pay or email-to-pay services during the Term of this Agreement. Notwithstanding the foregoing, nothing herein shall limit or prevent Licensee from developing internally, with its own employees, a system that provides text-to-pay or email-to-pay features, and offering that system to its customers, provided that (a) such employees have not used or directly or indirectly had access to the System or any Provider Material, (b) any such development is conducted in all respects with the use of or reference to the Provider's Confidential Information, and (c) Licensee will not provide such services to any Enrolled Customers during the Term. For clarity, Licensee agrees that once a customer is enrolled in the

> System, if Licensee subsequently begins providing similar services directly, it will not move those Enrolled Customers off of the System to Licensee's proprietary system for the duration of the Term. In the event that Licensee violates this provision of the Agreement, it shall pay to Provider, as liquidated damages, an amount equal to ten (10) times the annual fees previously paid to Provider with respect to such Enrolled Customers.

Agreement at p. 3, Section 4.1.

**ANSWER:** **The allegations in Paragraph 24 state legal conclusions as to which no response is required. Defendants also assert that the document speaks for itself. Defendants deny any remaining allegations contained in Paragraph 24.**

25. Among other things, the Agreement provides that if and to the extent that the System were or became subject to the Payment Card Industry Data Security Standards ("PCI DSS"), Hyfin would be obligated to comply with those requirements and provide certain compliance reporting to WorldPay. Agreement at p. 7, Section 12.2.

**ANSWER:** **The allegations in Paragraph 25 state legal conclusions as to which no response is required. Defendants also assert that the document speaks for itself. Defendants admit that Hyfin would be required to comply with the PCI DSS if the System were or became subject to the PCI DSS. Defendants state that Hyfin was obligated to comply with the PCI DSS requirements because the System was subject to the PCI DSS. Defendants deny any remaining allegations contained in Paragraph 25.**

C. **Inapplicability of PCI DSS Requirements**

26. PCI DSS compliance is designed to protect the privacy and security of sensitive cardholder data by ensuring that merchants and service providers meet minimum levels of security when they store, process and transmit that data.[2]

**ANSWER:** **Defendants admit that PCI DSS provides a baseline of technical and operational requirements designed to protect account data. Defendants deny any remaining allegations contained in Paragraph 26.**

---

[2]   The PCI Security Standards Council promulgates PCI DSS requirements. At all times relevant to this suit, the PCI DSS provisions in effect were version 3.2.1, available at: PCI DSS v3.2.1 (pcisecuritystandards.org/document-library/).

27.     PCI DSS requirements apply in three situations, none of which apply to Hyfin or the System:

1.      If the entity stores, processes or transmits cardholder data and/or sensitive authentication data.

2.      If the entity engages third party service providers for (i.e., outsources) their payment operations or management of their cardholder data environment ("CDE").

3.      If 1 and 2 do not apply, some PCI DSS requirements may still apply to an entity third party service provider if the entity can impact the security of, in turn, a service provider or merchant's CDE.

PCI-DSS-v3.2.1 at 7-12.

**ANSWER: Defendants deny the allegations in Paragraph 27.**

28.     Hyfin's System does not come within the scope of PCI DSS requirements because: (1) Hyfin has never stored, processed, or transmitted cardholder data (as WorldPay's vendor review process confirmed); (2) Defendants, not Hyfin, engage third party service providers; and (3) the System cannot impact the security of Defendants' cardholder data environment because Hyfin intentionally designed the System to avoid such a possibility.

**ANSWER: Defendants deny the allegations in Paragraph 28.**

29.     Because the System does not fall within any of the above three situations, PCI DSS requirements do not apply to it and therefore the obligations as set forth in Section 12.2, and its subparts, of the Agreement do not apply and have never applied to Hyfin.

**ANSWER: Defendants deny the allegations in Paragraph 29.**

30.     During the term of the Agreement, Defendants performed an annual risk assessment review of Hyfin, similar to their initial vendor review, and at no point during those reviews did Defendants inform Hyfin that its System was not in compliance with PCI DSS requirements.

**ANSWER:** Defendants admit that Hyfin was approved by vendor risk management through an initial vendor risk assessment and an annual vendor risk assessment. Defendants deny any remaining allegations contained in Paragraph 30.

31.     The System has not undergone material changes in functionality since the Agreement was executed such that it would become subject to the PCI DSS Requirements.

**ANSWER:** Defendants are without knowledge to admit or deny this allegation, and therefore, Defendants deny the allegations contained in Paragraph 31.

**D.      FIS and Hyfin Amend the Agreement**

32.     On or about July 31, 2019, Defendant FIS finalized its acquisition of WorldPay. The nature of the acquisition was a merger of WorldPay with and into a wholly-owned subsidiary of FIS, with WorldPay as the surviving entity and continuing as a wholly-owned subsidiary of FIS.

**ANSWER:** Defendants admit that on July 31, 2019, FIS completed its acquisition of Worldpay, Inc.

33.     Upon information and belief, following the merger, between July 31, 2021 and October 1, 2021, the operations formerly undertaken by WorldPay became a business unit of FIS known as Merchant Solutions. The FIS North American Integrated Payments division was a division of Merchant Solutions. On information and belief, in 2022, the functions of the North American Integrated Payments division were reorganized into divisions of FIS known as "Small and Medium Business" or "SMB," and "Enterprise."

**ANSWER:** Defendants admit that FIS North American Integrated Payments is a segment of the Merchant Solutions business unit. Defendants deny all remaining allegations contained in Paragraph 33.

34.     Effective October 1, 2021, FIS and Hyfin amended the Agreement in the First Amendment to TextPay White Label Software as a Service License Agreement (the "First Amendment").

**ANSWER:** Defendants admit the allegations in Paragraph 34.

35.     The First Amendment arose out of a breach of the original worldwide exclusivity provision of the Agreement by WorldPay/FIS.

**ANSWER: Defendants deny the allegations in Paragraph 35.**

36.     WorldPay/FIS represented and explained to Hyfin that as a result of the WorldPay/FIS merger, all of the existing WorldPay agreements were "rolling up into," and "inherited" by FIS.

**ANSWER: Defendants admit that FIS acquired Worldpay. Defendants deny all other allegations contained in Paragraph 36.**

37.     In the course of negotiating the Amendment, FIS told Hyfin that during FIS's review of Worldpay agreements for purposes of rolling them up into FIS, FIS had become aware of the worldwide exclusivity provision in the Agreement and the fact that, as a result of the merger, Defendants were in violation of that provision.

**ANSWER: Defendants admit that the Hyfin and Worldpay re-negotiated the exclusivity provisions resulting in the First Amendment to TextPay White Label Software as a Service License Agreement. Defendants deny all other allegations contained in Paragraph 37.**

38.     FIS explained that it needed to limit the scope of the exclusivity provision to North America so that its current operations could be in compliance with that provision.

**ANSWER: Defendants admit that the Hyfin and Worldpay re-negotiated the exclusivity provisions resulting in the First Amendment to TextPay White Label Software as a Service License Agreement. Defendants deny all other allegations contained in Paragraph 38.**

39.     To remedy the breach, the parties agreed to narrow the scope of the exclusivity provision to North America in exchange for certain increased pricing, elimination of FIS's ability to utilize internally-developed systems, and an extension of the minimum term of the Agreement.

**ANSWER: Defendants admit the amended Agreement exclusivity provisions applied only to North America. Defendants also assert that the document speaks for itself. Defendants deny all other allegations contained in Paragraph 39.**

40.     Specifically, Section 4.1 of the First Amendment replaced the prior exclusivity language with the following:

4.1    <u>Exclusive Use of System</u>. During the Term of this agreement, Licensee agrees:

a.     the FIS North American Integrated Payments division and its successors will **exclusively use and promote the System for any text-to-pay or email-to-pay features or functions** using the System integrated into the GoCart Product.

b.     the FIS North American Integrated Payments division and its successors will **exclusively use and promote the System for any text-to-pay or email-to-pay features or functions** offered to its customers, prospects or any third parties.

c.     not to develop internally a competing system that provides text-to-pay or email-to-pay features.

d.     will use reasonable endeavors to engage Provider in any future text-to-pay or email-to-pay opportunities and include Senior Executive Support.

First Amendment at p. 1, § 4.1 (emphasis added).

**ANSWER: Defendants assert that the document speaks for itself. The allegations in Paragraph 40 state legal conclusions as to which no response is required. To the extent a response is required, Defendants admit the allegations contained in Paragraph 40.**

41.     The First Amendment also increased the monthly minimum fee and increased certain other pricing. First Amendment at p. 1, § 4.2 and p. 3.

**ANSWER: Defendants state the document speaks for itself. The allegations in Paragraph 41 state legal conclusions as to which no response is required. To the extent a response is required, Defendants admit the allegations contained in Paragraph 41.**

42.     The term of the Agreement was modified such that the stated term of five (5) years from October 1, 2021 could only be terminated without cause after the first three (3) years by providing 12 months' written notice. First Amendment at p. 1, § 4.3. The First Amendment therefore effectively lengthened the minimum term of the Agreement from three years to four years.

**ANSWER: Defendants state the document speaks for itself. The allegations in Paragraph 42 state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 42.**

43.     The Agreement and First Amendment are collectively referred to herein as the "Amended Agreement."

**ANSWER: Paragraph 43 does not contain an allegation that can be admitted or denied. To the extent a response is required, Defendants deny the allegations contained in Paragraph 43.**

**E.     FIS Feigns Breach by Hyfin**

44.     Following the execution of the Amended Agreement, the System has not been exclusively used and promoted for any text-to-pay or email-to-pay features or functions by the North American Integrated Payments Division or its successors.

**ANSWER: Defendants deny the allegations in Paragraph 44.**

45.     According to press reports, after Defendant FIS acquired WorldPay it faced significant difficulty integrating the business. Earlier this year, FIS wrote-off a large portion of the value of the acquisition, made sizeable cuts to its workforce, and announced plans to spin off the WorldPay business.

**ANSWER: Defendants admit that in 2023 FIS announced non-cash goodwill impairment charges related to its Worldpay business, progress on its enterprise transformation program, and the separation of its Worldpay business. Defendants deny the remaining allegations in Paragraph 45.**

46.     On December 14, 2022, Defendants sent Hyfin a Notice of Breach claiming for the first time that the PCI DSS requirements applied to the System and that Hyfin was in violation of those requirements and the related contingent reporting obligations set forth in the Amended Agreement. A true and correct copy of Defendants' December 14, 2022 letter is attached hereto as **Exhibit 1**.

**ANSWER: Defendants admit they sent Hyfin a Notice of Breach letter on December 14, 2022 and that Exhibit 1 to the Complaint appears to be a true and correct copy of the letter, which speaks for itself. Defendants deny any remaining allegations in Paragraph 46.**

47.    Defendants' December 14th Notice of Breach demanded Hyfin cure the alleged breach and refund all fees paid to date totaling $1,511,160.34. *See* **Exhibit 1**.

**ANSWER: Defendants state the document speaks for itself. To the extent an answer is required, Defendants admit the allegations in Paragraph 47.**

48.    On December 16, 2022, Hyfin responded to Defendants' notice and reassured Defendant that the reporting requirements under Section 12.2 and its subparts were inapplicable to Hyfin because those requirements, as explained *supra*, do not apply to Hyfin or the System. A true and correct copy of Hyfin's December 16, 2022 letter is attached hereto as **Exhibit 2**.

**ANSWER: Defendants admit that Hyfin responded to Defendants' notice on or about December 16, 2022. Defendants deny the truth and accuracy of the contents of Hyfin's letter and deny all remaining allegations in Paragraph 48.**

49.    In early 2023, both (1) a former employee of FIS who is familiar with the System and the parties' relationship, and (2) Hyfin's main point of contact at FIS, acknowledged in writing that the PCI DSS requirements do not apply to the System. Nonetheless, Defendants' senior management and general counsel's office have continued to take the contrary position.

**ANSWER: Due to the lack of specificity of the allegations in Paragraph 49, Defendants are without sufficient information to determine the truth of the allegations contained in Paragraph 49. To the extent a response is required, Defendants deny the allegations contained in Paragraph 49.**

50.    In light of Defendants' senior management's continuing unjustified position on the PCI DSS issue, Hyfin contracted with Lazarus Alliance, Inc. ("Lazarus") in or about January 2023 to conduct an audit and assessment of the System (1) to confirm the applicability, or lack thereof, of PCI DSS requirements to the System, and (2) to confirm in the event the System did fall within the scope of PCI DSS whether Hyfin was in compliance with such requirements.

**ANSWER: Defendants are without sufficient information to determine the truth of the allegations contained in Paragraph 50. To the extent a response is required, Defendants deny the allegations contained in Paragraph 50.**

51.     Lazarus is a PCI DSS Qualified Security Assessor that has been approved by the PCI Security Standards Council, the same organization that promulgates the PCI DSS requirements, to test and assess an organization's compliance with the PCI DSS standards.

**ANSWER: Defendants are without sufficient information to determine the truth of the allegations contained in Paragraph 51. To the extent a response is required, Defendants deny the allegations contained in Paragraph 51.**

52.     On February 21, 2023, upon completion of the intensive audit process, Lazarus verified that the System does not store, process, and/or transmit cardholder data, and Hyfin does not have access to a cardholder data environment (CDE). Therefore, Lazarus certified that none of the PCI DSS v.3.2.1 requirements apply to the System. A true and accurate copy of Lazarus' PCI DSS Attestation of Compliance and Letter Affidavit are attached hereto as **Exhibit 3**.

**ANSWER: Defendants state the document speaks for itself. Defendants are without sufficient information to determine the truth of the allegations contained in Paragraph 52. To the extent a response is required, Defendants deny the allegations contained in Paragraph 52.**

53.     On March 3, 2023, Hyfin provided Defendants with Lazarus' PCI DSS Report on Compliance and Supporting Affidavit as further proof that the System was not subject to PCI DSS requirements and therefore Hyfin was compliant with the Amended Agreement. At that same time, Hyfin notified Defendants that they were in breach of the payment obligations under the Amended Agreement and requested that Defendants discuss resolution of the matter if they now wished to exit the Amended Agreement. A true and correct copy of Plaintiff's March 3, 2023 correspondence (without attachments) is attached hereto as **Exhibit 4**.

**ANSWER: Defendants state the document speaks for itself. Defendants are without sufficient information to determine the truth of the allegations contained in Paragraph 53. To the extent a response is required, Defendants deny the allegations contained in Paragraph 53.**

54.    Hyfin's attempts to engage with Defendants and resolve the parties' differences have been met with dismissive responses from Defendants that fail to articulate any factual basis to support their contention that the System is within the scope of PCI DSS requirements.

**ANSWER: Defendants deny the allegations contained in Paragraph 54.**

55.    On March 24, 2023, Defendants rejected Hyfin's position without further explanation or offer to discuss resolution, and purported to terminate the Amended Agreement. A true and correct copy of Defendant's March 24, 2023 correspondence is attached hereto as **Exhibit 5**.

**ANSWER: Defendants state the document speaks for itself. Defendants admit they rejected Hyfin's position. Defendants deny any remaining allegations contained in Paragraph 55.**

56.    In direct contradiction to Defendants' purported concerns for data security, Defendants have continued to use the System even as they allege that the System does not comply with PCI DSS requirements. Moreover, during that same time period, various FIS and/or WorldPay departments continued with plans to implement the System and have since reached out to Hyfin to inquire about using the System in future projects.

**ANSWER: Defendants deny the allegations contained in Paragraph 56.**

57.    Upon information and belief, Defendants' unsupported proclamation that Hyfin was in breach of the Amended Agreement was not based on a bona fide concern over compliance with security requirements, but rather was pretext for Defendants' attempt to avoid contractual commitments for reasons not related to Hyfin's performance or any legitimate data security concerns.

**ANSWER: Defendants deny the allegations contained in Paragraph 57.**

58.    Since the time Defendants first wrongfully claimed Hyfin was in breach of the Amended Agreement, Defendants have failed to timely pay contractual payments exceeding

$750,000.00, all in violation of the terms of the Amended Agreement, and have expressed their unequivocal rejection of any further obligations under the Amended Agreement.

**ANSWER: Defendants admit they have ceased making payments due to Hyfin's breach of its contractual obligations; therefore, no payment is due. Defendants deny all remaining allegations contained in Paragraph 58.**

59.    As such, Defendants have renounced all remaining minimum monthly payments payable for the remaining minimum term of the Amended Agreement through September 30, 2025. The unpaid minimums payments owed by Defendants to Hyfin through the remaining minimum term (through September 30, 2025) total several million dollars.

**ANSWER: Defendants admit they have ceased making payments due to Hyfin's breach of its contractual obligations; therefore, no payment is due. Defendants deny all remaining allegations contained in Paragraph 59.**

**F.    Defendants Breach the Exclusivity Provision**

60.    Upon information and belief, in an attempt to cut costs and in direct violation of the Amended Agreement's exclusivity provisions, Defendants' North American Integrated Payments Division (or its current equivalent division(s)) are using other third party and internally developed systems with text-to-pay or email-to-pay features or functions including but not limited to Payrix, WorldPay OmniFlex, and WorldPay Business Manager (the "Prohibited Systems").

**ANSWER: Defendants deny the allegations contained in Paragraph 60.**

61.    For each merchant enrolled in the Prohibited Systems, Hyfin is entitled to a onetime Set-Up fee and a recurring Monthly Account Fee under the terms of the Amended Agreement. Hyfin estimates the number of such merchants to be in excess of 640,000, for a total of tens of millions of dollars in setup fees alone, and several million dollars per month in Monthly Account fees.

**ANSWER: Defendants state the Amended Agreement speaks for itself. Defendants further assert the allegations state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 61.**

62.     Upon information and belief, Defendants have breached the exclusivity provisions of the Amended Agreement by failing to exclusively use and promote the System within the North American Integrated Payments Division (or its current equivalent division(s)) as required for any text-to-pay or email-to-pay features or functions offered to Defendants' customers.

**ANSWER: The allegations in Paragraph 62 state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 62.**

63.     Defendants' allegations of breach are nothing more than pretext to cut costs in the wake of attempting to unwind the WorldPay merger, which FIS now views as a failed economic venture. *See, e.g.*, Fontanella-Kahn, Megaw and Levingston, *WorldPay and FIS: the 'original sin' that tore up a $43bn merger*, FINANCIAL TIMES, March 1, 2023.

**ANSWER: Defendants deny the allegations contained in Paragraph 63.**

64.     Defendants' actions in lodging baseless and thoroughly disproven allegations of breach against Hyfin and in purporting to terminate the Amended Agreement breach their duty of good faith and fair dealing and are the legal cause of substantial damage to Hyfin for which Hyfin now seeks recovery in an amount to be determined at the time of trial.

**ANSWER: Defendants deny the allegations contained in Paragraph 64.**

## COUNT I: BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

65.     Plaintiff Hyfin incorporates by reference all Paragraphs above as if fully set forth herein.

**ANSWER: Paragraph 65 does not contain any allegations, and as such, Defendants cannot admit or deny the allegations in Paragraph 65. To the extent a response is required, Defendants deny the allegations contained in Paragraph 65.**

66.     The Amended Agreement is a valid and binding contract between Plaintiff Hyfin and Defendants.

**ANSWER: The allegations in Paragraph 66 state legal conclusions as to which no response is required. To the extent a response is required, Defendants admit the Amended Agreement is a valid and binding contract.**

67.     In the Amended Agreement, Defendants agreed (1) to pay Plaintiff Hyfin for the use of the System, (2) to exclusively use and promote the System for any text-to-pay or email-to-pay features or functions offered to certain of their customers, prospects, or any third parties, and (3) to forgo the use of any internally-developed competing system that provides text-to-pay or email-to-pay features.

**ANSWER: Defendants state the document speaks for itself. Defendants further state the allegations in Paragraph 67 state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 67.**

68.     Plaintiff Hyfin provided Defendants with access to the System pursuant to the Amended Agreement and has complied with all material obligations under the Amended Agreement but has not been paid since December 12, 2022.

**ANSWER: Defendants deny the allegations contained in Paragraph 68.**

69.     Defendants breached the Amended Agreement when they failed to pay required contractual payments and purported to terminate the Amended Agreement, each under the pretext that Plaintiff Hyfin had failed to comply with PCI DSS requirements that are inapplicable to Plaintiff Hyfin or the System.

**ANSWER: Defendants deny the allegations contained in Paragraph 69.**

70.     Moreover, Defendants, in breach of the Amended Agreement, have failed to exclusively use and promote the System for any text-to-pay or email-to-pay features or functions offered to certain of Defendants' customers and have developed their own competing system that provides text-to-pay or email-to-pay features.

**ANSWER: Defendants deny the allegations contained in Paragraph 70.**

71.     Defendants had and have an implied duty of good faith and fair dealing under the Amended Agreement.

**ANSWER: Defendants state the allegations in Paragraph 71 state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 71. Defendants further direct Plaintiff to their Partial Motion to Dismiss regarding Plaintiff's claim of breach of the implied duty of good faith and fair dealing claim.**

72.     In breach of this implied covenant, Defendants have failed to abide by the good faith spirit of the Amended Agreement's terms by acting with a self-serving motive in hopes of avoiding their obligations to Plaintiff Hyfin and thereby depriving Plaintiff Hyfin of the expected benefits of the Amended Agreement.

**ANSWER: Defendants state the allegations in Paragraph 72 state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 72. Defendants further direct Plaintiff to their Partial Motion to Dismiss regarding Plaintiff's claim of breach of the implied duty of good faith and fair dealing claim.**

73.     As a direct and proximate result of Defendants' breach of contract and breach of the duty of good faith and fair dealing, Plaintiff Hyfin has suffered, and continues to suffer, damages exceeding $75,000.00, exclusive of interest and costs.

**ANSWER: Defendants deny the allegations contained in Paragraph 73.  Defendants further direct Plaintiff to their Partial Motion to Dismiss regarding Plaintiff's claim of breach of the implied duty of good faith and fair dealing claim.**

74.     The Amended Agreement provides that in the event a suit is instituted arising out of or related to the Agreement, the prevailing party may recover its actual attorneys' fees and costs. Agreement at p. 12, § 17.12. Accordingly, Plaintiff Hyfin is also entitled to recover its fees and costs incurred in bringing and pursuing this action.

**ANSWER: Defendants state the allegations in Paragraph 74 state legal conclusions as to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 74.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hyfin prays for judgment against Defendants jointly and severally as follows:

75.    Compensatory damages in excess of $75,000.00, the exact amount of which to be determined at the time of trial;

**ANSWER: Defendants deny that Plaintiff is entitled to any damages, and thus, Defendants deny the allegations contained in Paragraph 75.**

76.    An award of actual and reasonable attorneys' fees and costs for services rendered to Plaintiff Hyfin in this action;

**ANSWER: Defendants deny that Plaintiff is entitled to any damages, and thus, Defendants deny the allegations contained in Paragraph 76.**

77.    An award of pre- and post-judgment interest;

**ANSWER: Defendants deny that Plaintiff is entitled to any damages, and thus, Defendants deny the allegations contained in Paragraph 77.**

78.    Such other and further relief as the Court deems just and proper.

**ANSWER: Defendants deny that Plaintiff is entitled to any damages, and thus, Defendants deny the allegations contained in Paragraph 78.**

## DEMAND FOR JURY TRIAL

Plaintiff Hyfin demands a trial by jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Local Rule 40.2(a), Plaintiff Hyfin designates Kansas City, Kansas as the place of trial for this matter.

## DEFENDANTS' AFFIRMATIVE DEFENSES:

Defendants reserve the right to amend their Answer and Affirmative Defenses to allege additional defenses that it may have against Plaintiff if additional defenses become apparent

throughout the course of this litigation. Notwithstanding the foregoing and without waiving its right to assert additional defenses, Defendants assert the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief may be granted, because:

a. The Agreement between the parties clearly defines Plaintiff's obligation to comply with the PCI DSS, and Plaintiff's failure to comply with the PCI DSS constitutes a breach of the Agreement. Thus, as Plaintiff was first to breach, Defendants were justified and authorized to cancel the Agreement, and Defendants were no longer subject to the terms of the Agreement after Plaintiff's breach;

b. Plaintiff's allegations regarding a breach are impermissibly vague;

c. Plaintiff's claim for the breach of good faith and fair dealing fails because Plaintiff's failure to comply with the PCI DSS constitutes a breach of the Agreement per the Agreement's terms, and thus, Defendants did not act in bad faith in terminating the Agreement and acted in accordance with the terms of the Agreement.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands because Plaintiff materially breached the Agreement between the parties, causing Defendants irreparable damage and injury, as set forth in greater detail in Defendants' Counterclaim.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is equitably estopped from asserting its claims because Plaintiff has materially breached provisions of the Agreement, unfairly causing Defendants irreparable injury and damage, as set forth in greater detail in Defendants' Counterclaim.

### FOURTH AFFIRMATIVE DEFENSE

Defendants actions taken with respect to the Agreement were taken in good faith and in full compliance with all federal and state laws, were taken for good cause and in the good faith exercise of reasonable judgment, and were based on legitimate reasons authorized by the Agreement.

### FIFTH AFFIRMATIVE DEFENSE

Defendants state Plaintiff failed to mitigate its damages, if any exist and are proven at trial.

### SIXTH AFFIRMATIVE DEFENSE

Defendants assert that Plaintiff's claims are barred by the statute of limitations and are otherwise time-barred, both at law and in equity.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants state there is no basis in law or fact on which Plaintiff is entitled to recover damages.

### EIGHTH AFFIRMATIVE DEFENSE

Defendants state to the extent Plaintiff is awarded damages, such damages should be reduced by any payments or set off owed to Defendants.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to an award of punitive damages because such damages would violate the Fifth and Fourteenth Amendments of the United States Constitution. Even if an award

of punitive damages could be constitutional in this case, punitive damages would be inappropriate as Defendants engaged in no malicious, wrongful or intentional conduct upon which an award of such damages could be based.

*****************************

WHEREFORE, Defendants respectfully requests this Court dismiss the Complaint with prejudice, enter judgment in its favor that no damages be awarded in favor of Plaintiff, that Defendants be awarded their costs and fees, and that the Court enter any further relief that it deems just and proper.

## DEFENDANTS' COUNTERCLAIMS

Defendants Fidelity Information Services, LLC and Worldpay, LLC, ("Defendants") bring its Counterclaims against Plaintiff Hyfin LLC ("Hyfin"), and state as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Upon information and belief, Hyfin LLC ("Hyfin") is a Kansas limited liability company with its principal place of business located at 8711 Penrose Lane, Suite 200, Lenexa, KS 66219. Plaintiff Hyfin has six (6) members: JSL Enterprises, Inc., Scavuzzos Holdings, LLC, Dash One, LLC, Timothy Walla, Guillermo Haro, and Angelica Haro all of which are citizens of Kansas, Missouri, Illinois, or California.

2.      Defendant Fidelity Information Services, LLC ("FIS") is an Arkansas limited liability company with its principal place of business located at 347 Riverside Ave, Jacksonville, FL 32202. Defendant FIS has one (1) member: Fidelity National Information Services, Inc., which is a corporation incorporated in the state of Georgia with a principal place of business in Florida.

3.      Defendant Worldpay, LLC ("Worldpay") is a Delaware LLC whose sole member, is Fidelity National Information Services, Inc.

4.    Jurisdiction in this action is proper pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, and because complete diversity of citizenship exists among the parties.

5.    Venue in this action is Proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth occurred in this District, or, in the alternative, pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2).

### FACTS COMMON TO ALL COUNTS

6.    Hyfin offered a contactless payment system that allowed merchants to receive contactless payments for goods and services by hosting a website with an integrated payment acceptance mechanism via an iFrame (the "System").

7.    On July 19, 2021, Hyfin and Worldpay entered into a TextPay White Label Software as a Service License Agreement (the "Agreement") wherein Hyfin agreed to provide Worldpay with access to and the right to use the System in exchange for certain payments.

8.    Section 2 of the Agreement authorized Worldpay to offer the System to its customers under Worldpay's own label and brand.

9.    Section 12.2 of the Agreement provides that if and to the extent that the System were or became subject to the Payment Card Industry Data Security Standards ("PCI DSS"), Hyfin would be obligated to comply with those requirements and provide certain compliance reporting to Worldpay.

10.    Specifically, Section 12.2 states:

**Provider PCI Data Security Standard.**

If and to the extent Provider [Dash Now LLC and Hyfin] or any Product is subject to the Payment Card Industry Data Security Standard requirements (as amended from time to time) ("PCI DSS"). Provider will comply with said requirements. In addition, if and to the extent Provider or any Product is subject to PCI DSS requirements:

(a) Provider will submit their Report of Compliance ("ROC") within ten (10) days of the execution of this Supplement and will have a ROC prepared, and provide to FIS such updated ROC, annually thereafter;

(b) Provider will publish to 'Visa' Global Service Provider registry and maintain 'Green Status' in such registry throughout the duration of the Agreement; and

(c) **if Provider fails to maintain 'Green Status' in the Visa Global Service Provider registry, the following provisions shall apply:**

If Provider is in 'Yellow Status' in the Visa Global Service Provider registry, Provider will provide the Product free of charge until Provider obtains 'Green Status'; and

**If Provider** is in 'Red Status' or **is not listed in the Visa Global Service Provider registry: (i) Provider will provide the Products free of charge until Provider obtains 'Green Status'; or (ii) if Provider does not obtain 'Green Status' within ninety (90) days of written notice from Licensee [Worldpay], in addition to any other remedies, Licensee may terminate the Agreement with no financial obligation to Provider arising from such termination.**

Agreement, Section 12.2 (emphasis added).

11.    Failure to comply with the PCI DSS when required would be a breach of the Agreement.

12.    The System was subject to PCI DSS requirements.

13.    For example, the System includes a website with an embedded iFrame provided by a payment processing partner for capturing cardholder data. The merchant's customers will navigate to the website and enter the payment data into the embedded iFrame. Because the iFrame is embedded as part of the website, any compromise of the website would compromise the data the merchant customers entered into the embedded iFrame.

14.    Hyfin is also a service provider under PCI DSS v3.2.1 and v4.0 because, for instance, it takes data from multiple merchants and is a potential point of aggregate risk that could affect the security of the payment data.

15.     The System did not comply with PCI DSS Standards.

16.     Failure to comply with the PCI DSS Standards breached Section 12.2 of the Agreement.

17.     Effective October 1, 2021, FIS and Hyfin amended the Agreement in the First Amendment to TextPay White Label Software as a Service License Agreement. The Agreement and First Amendment are collectively referred to herein as the "Amended Agreement."

18.     On December 14, 2022, Defendants notified Hyfin that it is subject to the PCI DSS requirements and is not in compliance. *See* Exhibit 1 to the Complaint.

19.     In this notice, Defendants reiterated the Agreement's terms, including that Hyfin is required to provide the Product free of charge until Hyfin obtains "Green Status" in the "Visa Global Service Provider registry." Defendants reiterated that Hyfin is not listed as a service provider in the registry. Defendants notified Hyfin this failure is a material breach of the Agreement and required Hyfin cure the breach. Defendants notified Hyfin it was required to refund all fees paid to date totaling $1,511,160.34. *See id.*

20.     Under the Agreement's terms, Defendants have no financial obligation to Plaintiff arising from Defendants' actions in terminating the Agreement due to Plaintiff's failure to comply with the PCI DSS standards. Agreement, p. 7, Section 12.2(c).

21.     To date, Hyfin has not refunded any of the $1,511,160.34 in fees owed to Defendants.

22.     On December 16, 2022, Hyfin responded to Defendants' notice and stated the System was not subject to PCI DSS standards. *See* Exhibit 2 to the Complaint.

23.    Defendants engaged Coalfire Systems, Inc. in February 2022 to conduct an audit and assessment of the System to determine the applicability of PCI DSS requirements to the System.

24.    Coalfire is a PCI DSS Qualified Security Assessor that has been approved by the PCI Security Standards Council, the same organization that promulgates the PCI DSS requirements, to test and assess an organization's compliance with the PCI DSS standards.

25.    Coalfire determined that the System is subject to the PCI DSS requirements.

26.    Based on this opinion, on March 24, 2023 and over ninety (90) days after providing notice of breach in accordance with the Amended Agreement's terms, Defendants terminated the Amended Agreement for Hyfin and the System's failure to comply with the PCI DSS standards as required in Section 12.2 of the Amended Agreement. *See* Exhibit 5 to the Complaint.

27.    After Hyfin filed this lawsuit, Defendants re-engaged Coalfire to review the evidence submitted by Hyfin including the Lazarus Alliance, Inc. assessment and consider if the System was subject to PCI DSS standards.

28.    Once again, Coalfire concluded that the System was subject to PCI DSS requirements.

29.    Due to Hyfin's breach, Defendants' payment obligations under the Amended Agreement have ceased.

## CAUSES OF ACTION

### COUNT ONE – BREACH OF CONTRACT
### Against Hyfin

30.    Defendants re-allege each and every one of the above paragraphs as though fully set forth herein.

31.    Hyfin and Defendants entered into a valid and binding contract.

32.    The Agreement was amended on October 1, 2021 (hereinafter "the Amended Agreement").

33.    The Amended Agreement contractually obligated Hyfin and the System to comply with the PCI DSS standards. Amended Agreement, p. 7, Section 12.2.

34.    Hyfin breached its contractual obligations because the System did not comply with the PCI DSS requirements pursuant to the Amended Agreement.

35.    Defendants provided the required notice to Hyfin on December 14, 2022 and advised Hyfin that the System was not in compliance with Section 12.2 of the Amended Agreement, including the requirement that Hyfin obtain and maintain "Green Status" on the Visa Global Service Provider registry. This served as written notice of the defect and started the ninety day time period for Hyfin to cure the defect. *See* Exhibit 5 to the Complaint.

36.    Hyfin failed to cure the defect within ninety days.

37.    As a result of Hyfin's breach and failure to cure, Defendants exercised their contractual rights to cancel the Amended Agreement. Amended Agreement, Section 12.2(c)(ii) ("If Provider does not obtain 'Green Status' within ninety (90) days of written notice from Licensee, [i]n addition to any other remedies, Licensee may terminate the Agreement with no financial obligation to Provider arising from such termination.").

38.    Hyfin's failure to comply with their contractual obligations damaged Defendants in that Worldpay has paid to Hyfin $1,511,160.34 in fees that Hyfin was required to reimburse. Hyfin is obligated to reimburse these payments pursuant to the terms of the Amended Agreement. Specifically, Section 12.2(c) of the Amended Agreement provides that if Hyfin is in "Red Status" or not listed in the Visa Global Service Provider registry, "(i) Provider will provide the Products free of charge until Provider obtains 'Green Status'; or (ii) if Provider does not obtain 'Green

Status' within ninety (90) days of written notice from Licensee, [i]n addition to any other remedies Licensee may terminate the Agreement with no financial obligation to Provider arising from such termination." Thus, Hyfin should not have charged any fees during the time period in which it was not registered with the Visa Global Service Provider registry.

39.     Defendants have no financial obligation to Plaintiff arising from Defendants' actions in terminating the Agreement due to Plaintiff's failure to comply with the PCI DSS standards. Agreement, p. 7, Section 12.2(c).

40.     Hyfin's action in charging fees, and failing to reimburse them when requested, was a breach of Section 12.2(c) of the Amended Agreement.

41.     Defendants were damaged in the amount of fees paid to Hyfin that remain unreimbursed while Hyfin was subject to the PCI DSS standards and not registered on the Visa Global Service Provider registry in the amount of $1,511,160.34.

**WHEREFORE**, Defendants pray for judgment against Hyfin as follows:

1.     A judgment is entered in favor of Defendants and against Hyfin for breach of contract and for damages in an amount to be proven at trial, but not less than $75,000, exclusive of costs, disbursements, interest, and fees;

2.     An order that Defendants are awarded its reasonable attorneys' fees, consulting fees and other litigation expenses;

3.     The award of pre- and post-judgment interest as permitted by law; and

4.     An order that Defendants are awarded such other further relief as this Court deems just and proper.

Dated: October 24, 2023                    Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:   /s/ Robert M. Thompson
       Robert M. Thompson        KS #14673
       Courtney M. Stout          KS #28447
       1200 Main Street, Suite 3800
       Kansas City, MO 64105
       Telephone: (816) 374-3200
       Facsimile: (816) 374-3300
       rmthompson@bclplaw.com
       courtneym.stout@bclplaw.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 24, 2023, the following was filed on the Court's electronic filing system, providing notice to all counsel of record.

   /s/ Robert M. Thompson
       Attorney for Defendants